COOLEY LLP
BENEDICT HUR (224018)
(bhur@cooley.com)
JOSHUA ANDERSON (312836)
(joshua.anderson@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone:    +1 415 693 2000
Facsimile:    +1 415 693 2222

Attorneys for Defendant
Depop, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LINSEY DINH, on behalf of himself and those similarly situated,<br><br>                Plaintiff,<br><br>        v.<br><br>DEPOP, INC.,<br><br>                Defendant. | Case No. 3:26-cv-01173-VC<br><br>**NOTICE OF PENDENCY OF OTHER ACTION OR PROCEEDING**<br><br>Hon. Vince Chhabria |

Pursuant to Civil Local Rule 3-13, Defendant Depop, Inc. ("Depop") submits this Notice of Pendency of Other Action or Proceeding.

On July 1, 2025, Plaintiff Nicole Yuen brought a putative class action against Depop in Santa Clara County Superior Court, styled *Yuen vs. Depop, Inc.*, 25CV469747. The *Yuen* action concerns the same allegations as those alleged herein. A copy of the operative complaint is appended hereto.

The parties have recently completed mediation and Depop expects the case will be resolved within months. A case management conference is scheduled before the Superior Court on June 4, 2026.

The *Yuen* action concerns the same subject matter as this action, and the plaintiff here is encompassed within the *Yuen* class.

DATED: May 5, 2026                    By:  /s/ Joshua Anderson

                                      COOLEY LLP
                                      BENEDICT HUR (224018)
                                      (bhur@cooley.com)
                                      JOSHUA ANDERSON (312836)
                                      (joshua.anderson@cooley.com)
                                      3 Embarcadero Center, 20th Floor
                                      San Francisco, California 94111-4004
                                      Telephone:    +1 415 693 2000
                                      Facsimile:    +1 415 693 2222

                                      Attorneys for Defendant
                                      Depop, Inc.

NOTICE OF PENDENCY OF OTHER ACTION
CASE NO. 3:26-CV-01173-VC

Vess A. Miller, State Bar No. 278020
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
vmiller@cohenmalad.com

Carly M. Roman, State Bar No. 349895
**STRAUSS BORRELLI, PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
croman@straussborrelli.com

Gerard J. Stranch, IV*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
gstranch@stranchlaw.com

*Attorneys for Plaintiff Nicole Yuen*
* Application for admission *pro hac vice* forthcoming

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 7/1/2025 4:32 PM
Reviewed By: L. Ayala
Case #25CV469747
Envelope: 19940723**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SANTA CLARA

UNLIMITED JURISDICTION

| | |
|---|---|
| NICOLE YUEN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>DEPOP, INC., a corporation,<br><br>Defendant. | Case No.:    25CV469747<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND RESTITUTION**<br><br>**1. Violation of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750–1784; 2. Violation of the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500–17606; 3. Violation of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200–17210; and 4. Unjust Enrichment**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Nicole Yuen, on behalf of herself and all others similarly situated, complains of Defendant Depop Inc. as follows, on information and belief except as to her own experiences and matters of public record:

**INTRODUCTION**

1.    "When shopping for a good or service, consumers want to know: how much?"[1]

2.    "Unfortunately, consumers face widespread and growing unfair and deceptive fee practices that make it much harder to find out" the answer to this basic question.[2]

3.    One such unfair and deceptive practice is called "drip pricing."

4.    "Drip pricing" is the practice of listing one price for a good or service up front, then adding one or more hidden "junk fees" to the total price just before the consumer decides to complete the transaction.

5.    California law prohibits drip pricing as a form of dishonest bait and switch advertising.

6.    Depop, the operator of an online clothing resale marketplace, does just what the law prohibits. The price it advertises up front is not a price any consumer can pay. The up-front price exists only to entice consumers into making a purchasing decision anchored in the up-front price, discounting or ignoring the hidden, mandatory junk fee Depop smuggles in later.

7.    Plaintiff Nicole Yuen bought clothing on Depop's platform, the price of which was misleadingly and unlawfully advertised as lower than the total price she would pay.

8.    On her own behalf and on behalf of all other similarly injured consumers in California, Plaintiff brings this action to put a stop to Depop's illegal business practices and to remedy the injuries they have caused.

**JURISDICTION AND VENUE**

9.    This Court has subject matter jurisdiction of this action under the California Constitution, article VI, § 10, and Code of Civil Procedure § 410.10.

10.    The total amount of damages incurred by Plaintiff and the Class in the aggregate exceeds the jurisdictional minimum of this Court.

---

[1] Trade Regulation Rule on Unfair or Deceptive Fees, 90 Fed. Reg. 2,066, 2,067 (Jan. 10, 2025).
[2] *Id.*

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND RESTITUTION

-1-

11.     Venue is proper in this Court under California Bus. & Prof. Code § 17203 and Code of Civil Procedure §§ 395(a) and 395.5 because Plaintiff Nisha Sandhu's injuries occurred in the County of Los Angeles.

## PARTIES

12.     Plaintiff Nicole Yuen is a resident of San Jose, Santa Clara County, California.

13.     Defendant Depop Inc. is a corporation incorporated in Delaware with its principal place of business at 188 Grand St., 4th Floor, New York, NY 10013.

## FACTUAL ALLEGATIONS

### I.     Drip pricing harms consumers.

14.     "Hidden fees" refer to fees charged by sellers in consumer transactions that are obscured from the consumer.[3] Hidden fees are a kind of "junk fees."[4] Such fees are "mandatory but not transparently disclosed to consumers."[5] Consumers may be "lured in with the promise of a low price, but when they get to the register, they discover that price was never really available."[6] Hidden junk fees are thus "an evolution of bait-and-switch schemes."[7]

15.     The practice of disclosing hidden or junk fees "late in the buying process" is often called "drip pricing."[8] Using drip pricing, "firms advertise only part of a product's total price to lure in consumers."[9] Then, once "the consumer already has spent significant time selecting and finalizing a product or service plan to purchase," the mandatory junk fees are disclosed.[10]

---

[3] *See* Fed. Trade Comm'n, *Bringing Dark Patterns to Light* 7 (Sept. 2022), https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%209.14.2022%20-%20FINAL.pdf/.
[4] Fed. Trade Comm'n, *FTC Proposes Rule to Ban Junk Fees* (Oct. 11, 2023), https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees/ (discussing "hidden fees" as a "junk fee practice[]").
[5] The White House, *The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition*, The White House (March 5, 2024), https://web.archive.org/web/20250118015252/https://www.whitehouse.gov/cea/written-materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition/.
[6] *Id.*
[7] *Id.* n.2.
[8] *Bringing Dark Patterns to Light*, *supra* note 3, at 8–9.
[9] *Id.* at 8.
[10] *Id.* at 9.

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND RESTITUTION

16.    As an example of drip pricing of junk fees, the FTC has pointed to "'convenience fee[s]' that appear[] only when a shopper reaches the check-out screen":[11]



17.    Consumers "feel committed to a purchase" at this stage of the transaction and thus go through with it anyway, despite feeling "frustrated" that "they have no idea how much it costs until it's too late."[12] "Even when consumers who have experienced drip pricing are aware of the total price and are given the option to change their selection, many do not, despite being dissatisfied."[13]

18.    "[S]everal psychological mechanisms" are responsible for drip pricing's effectiveness at influencing consumer behavior. Once a consumer has committed to a purchase, "abandoning it" in the face of drip-priced junk fees "may cause feelings of uncertainty, dissatisfaction and cognitive dissonance." Drip pricing practitioners may "rely on the extra effort that would be required" for consumers to back out of the transaction at its last step, "such that consumers accept the price increasing later in the purchase process."[14]

19.    In turn, "[s]everal behavioural biases" drive these mechanisms, including "anchoring," or the tendency to "anchor on initial price information" without "fully adjust[ing]" one's "view of the

---

[11] *Id.* at 23, 30.
[12] *Id.* at 9.
[13] U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital Design Can Harm Competition and Consumers* 29 (Apr. 2022), https://assets.publishing.service.gov.uk/media/624c27c68fa8f527710aaf58/Online_choice_architect ure_discussion_paper.pdf/.
[14] *Id.* at 30.

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND RESTITUTION

price" once all mandatory fees are disclosed; the "sunk cost fallacy," or the tendency to "continue with a process if [consumers] have invested time or effort"; and the "endowment effect," or the tendency to "place a higher value on objects [consumers] own, or have imagined owning."[15]

20. Drip pricing harms consumers.

21. "Junk fees cost American families tens of billions of dollars each year and inhibit competition, hurting consumers, workers, small businesses, and entrepreneurs."[16]

22. "Drip pricing has been shown in several experimental, theoretical and real-world contexts to lead consumers to buy more, overspend, underestimate the total price, make mistakes when searching, and be less happy with their purchases."[17]

23. As one individual commenter put it to the FTC, drip pricing is "endless, ubiquitous and makes it extremely difficult for consumers to make informed decisions."[18]

24. As another individual commenter put it to the FTC, "It's one thing to be on guard when walking down a dark alley, but being on guard every time you want to take a vacation, go to a concert, fly home to see a sick loved one—that's just not fair."[19]

25. "Drip pricing interferes with consumers' ability to price-compare and manipulates them into paying fees that are either hidden entirely or not presented until late in the transaction."[20]

26. According to one study, consumers who were not shown full prices, including mandatory fees, at the beginning of a transaction "ended up spending about 20% more money and were 14% more likely to complete [it]" than consumers to whom junk fees were disclosed up front.[21]

27. Another study found that consumers "based their purchase decision exclusively on the

[15] *Id.*

[16] The White House, *Biden-Harris Administration Announces Broad New Actions to Protect Consumers From Billions in Junk Fees* (Oct. 11, 2023), https://web.archive.org/web/20250118020934/https://www.whitehouse.gov/briefing-room/statements-releases/2023/10/11/biden-harris-administration-announces-broad-new-actions-to-protect-consumers-from-billions-in-junk-fees/.

[17] *Online Choice Architecture*, *supra* note 13, at 30.

[18] Trade Regulation Rule on Unfair or Deceptive Fees, 90 Fed. Reg. 2,066, 2,067 (Jan. 10, 2025).

[19] *Id.*

[20] *Bringing Dark Patterns to Light*, *supra* note 3, at 9.

[21] *Id.*

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND RESTITUTION

-4-

base price," that is, the price before hidden fees were added.[22]

28.    Drip pricing thus causes consumers to "spend more than they intend, choose unsuitable products and waste their time."[23]

29.    Drip pricing harms honest businesses, too.

30.    An "honest business that sets forth the total price of its product at the outset will be at a significant disadvantage when compared to a seller that advertises an artificially low price to draw consumers in, then adds mandatory charges late in the transaction."[24]

31.    Drip pricing thereby harms free and fair competition.

32.    "Since consumers are more likely to choose products based on characteristics they find most salient, businesses will tend to compete harder on those characteristics and less hard on less salient characteristics." Mandatory fees disclosed only at the final stages of a transaction are definitionally "less salient" than up-front prices, and therefore generate "little to no competition."[25]

33.    One experimental study found that sellers "set the highest possible drip price, and compete only on base prices."[26]

34.    For this reason, drip pricing is difficult or impossible to correct using only market pressures.[27]

35.    The law must intervene.[28]

---

[22] Alexander Rasch, Miriam Thöne, Tobias Wenzel, *Drip Pricing and Its Regulation: Experimental Evidence*, 176 J. Econ. Behavior & Org. 353 (2020), https://www.sciencedirect.com/science/article/abs/pii/S0167268120301189/, *pre-print available at* https://www.econstor.eu/bitstream/10419/181760/1/1029741549.pdf/.
[23] *Online Choice Architecture*, *supra* note 13, at 30.
[24] *Bringing Dark Patterns to Light*, *supra* note 3, at 9.
[25] *Online Choice Architecture*, *supra* note 13, at 30.
[26] *Drip Pricing and Its Regulation*, *supra* note 22.
[27] *See id.* at 31 ("Where there are enough consumers who do not detect and avoid drip pricing, competitive pressures may also not be sufficient to incentivise businesses to educate or provide more upfront price information to consumers.").
[28] *See id.* (discussing regulatory interventions).

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND RESTITUTION

-5-

**II.    California and federal law protect consumers against drip pricing.**

36.    "[T]they price a Californian sees should be the price they pay."[29] This straightforward, commonsense proposition underlies California Senate Bill 478, effective July 1, 2024, codified at Cal. Civ. Code § 1770(a)(29), called the "Honest Pricing Law" or "Hidden Fees Statute."

37.    The Honest Pricing Law was enacted to suppress the dishonest bait-and-switch of drip pricing. The Legislature declared that SB 478 is "intended to specifically prohibit drip pricing, which involves advertising a price that is less than the actual price that a consumer will have to pay for a good or service,"[30] and identified drip pricing as a form of "bait and switch advertising."[31]

38.    As the California Attorney General has summarized succinctly, "The law requires honest pricing. It prohibits businesses from '[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges' other than government-imposed taxes or fees or reasonable shipping costs."[32]

39.    "Honest pricing" means not just that junk fees are disclosed at some point in the transaction. "Can a business comply with this law by disclosing additional required fees before a consumer finalizes a transaction? No. The advertised or listed price must be the full price that the consumer is required to pay. … If a business chooses to list a price for a good or service, the advertised price must be the entire amount the consumer will have to pay, not including any fees for optional services or features, taxes, or shipping charges."[33]

40.    Further, "like other forms of bait and switch advertising," drip pricing is "prohibited by existing [California] statutes, including the Unfair Competition Law (Chapter 5 (commencing with Section 17200) of Part 2 of Division 7 of the Business and Professions Code) and the False Advertising Law (Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business

---

[29] Cal. Dep't of Justice Off. of the Att'y Gen., *SB 478 Frequently Asked Questions* 1 (emphasis omitted), https://oag.ca.gov/system/files/attachments/press-docs/SB%20478%20FAQ%20%28B%29.pdf/.
[30] S.B. 478, 2023–2024 Leg. § 1(a) (Cal. 2023).
[31] *Id.* § 1(b).
[32] Cal. Dep't of Justice Off. of the Att'y Gen., *supra* note 29, at 1 (quoting Cal. Civ. Code § 1770(a)(29)(A)).
[33] *Id.* at 2–3.

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND RESTITUTION

and Professions Code)."[34]

41.    Federal law likewise prohibits dishonest bait-and-switch advertising like drip pricing. Section 5(a) of the FTC Act prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce."[35]

42.    The FTC has brought enforcement actions against drip pricing practices for violating Section 5(a). For example, in *Federal Trade Commission v. Liberty Chevrolet, Inc.*, the agency alleged among other things that a car dealership advertised "vehicles for sale at a specific price but then fail[ed] to honor those prices."[36] The dealership falsely represented that consumers could purchase cars for advertised prices that "failed to include an additional certification fee."[37] Consumers would invariably find that the advertised car could "only be purchased for a higher price" that included the fee.[38] The dealership thereby "charge[d] consumers higher sales prices than advertised"[39] in violation of Section 5(a).[40]

43.    The FTC has also warned businesses that drip pricing invites Section 5(a) enforcement. For example, the agency has warned hotel operators that failure to disclose mandatory fees up front "may violate the law by misrepresenting the price consumers can expect to pay for their hotel rooms."[41]

44.    In furtherance of its authority "to define with specificity unfair or deceptive acts or practices" under the FTC Act, the FTC has recently promulgated a Rule on Unfair or Deceptive Fees,

---

[34] S.B. 478, 2023–2024 Leg. § 1(b) (Cal. 2023).
[35] 15 U.S.C. § 45(a).
[36] Compl. ¶ 10, *Fed. Trade Comm'n v. Liberty Chevrolet, Inc.*, No. 1:20-cv-03945-PAE (S.D.N.Y.), ECF No. 7.
[37] *Id.* ¶ 11.
[38] *Id.*
[39] *Id.*
[40] *Id.* ¶¶ 35–37. The case settled for $1,500,000 in consumer refunds and permanent injunctive relief. *See Fed. Trade Comm'n v. Liberty Chevrolet, Inc.*, No. 1:20-cv-03945-PAE (S.D.N.Y.), ECF Nos. 15–16.
[41] Fed. Trade Comm'n, *Model Warning Letter* 1 (Nov. 2012), https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-warns-hotel-operators-price-quotes-exclude-resort-fees-other-mandatory-surcharges-may-be/121128hoteloperatorsletter.pdf; *see* Fed. Trade Comm'n, *FTC Warns Hotel Operators that Price Quotes that Exclude 'Resort Fees' and Other Mandatory Surcharges May Be Deceptive* (Nov. 28, 2012), https://www.ftc.gov/news-events/news/press-releases/2012/11/ftc-warns-hotel-operators-price-quotes-exclude-resort-fees-other-mandatory-surcharges-may-be/.

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND RESTITUTION

which prohibiting drip pricing in the live-event ticketing and short-term lodging industries specifically.[42]

### III.    Depop dishonestly baits consumers using drip pricing.

45.    Depop operates an online clothing resale platform, a "social marketplace where 10 million people come to buy, sell and discover unique items."[43] bl

46.    For example, searching Depop for "blue carhartt jeans" may return a $17 listing:



47.    However, that price is not available to any consumer.

48.    Clicking on the listing takes the user to a product page that again lists the a $17 price:



[42] Trade Regulation Rule on Unfair or Deceptive Fees, 90 Fed. Reg. 2,066 (Jan. 10, 2025).
[43] Depop, *Seller Handbook* 6, https://sellers.depop.com/Seller_Handbook_Final_US.pdf/.

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND RESTITUTION

49.    Clicking the "Buy now" leads to a sign-in page:



50.    If the user instead clicks "Add to bag," continues shopping, and retunrs to their bag later, the $17 price is now listed as the "Total" price, with shipping charges to be "calculated at checkout":



51.    So much for the bait. Now the switch.

52.    At the checkout screen, new users must first input a shipping address before shipping, sales tax, and a previous undisclosed "Marketplace fee" will be calculated.

53.    Only now, after consumers have likely invested significant time and energy selecting the item of their choice from initial search results, reviewing its product page, creating a new Depop account or signing in, electing to check out, and inputting shipment information—and having seen a

$17 price advertised repeatedly, including once as a "Total" price plus shipping—is the true cost of the transaction revealed:

| rostonthrifts | |
| --- | --- |
| ★ ★ ★ ★ ★ (15) | |
| 90's Regular fit Carhart... Size 34" | $17.00 |
| Subtotal | US$17.00 |
| Shipping | US$7.99 |
| Marketplace fee ? | US$1.55 |
| Sales tax ^ | US$1.95 |
| **Total to pay** | **US$28.49** |

54.    A junk "Marketplace fee" of $1.55 has been added to the consumer's total.

55.    The "Marketplace fee" is mandatory but never disclosed or mentioned before entry of shipping information at the checkout screen.

56.    Depop elected to begin extracting this junk fee from consumers just weeks after the Honest Pricing Law became effective.

57.    Having previously charged sellers on its platform a disclosed 10 percent fee per item sold, on July 15, 2024, Depop announced it would stop charging U.S. sellers and start charging U.S. buyers.[44]

58.    This transfer of costs from sellers to buyers, or from business customers to consumers,

---

[44] Depop, *Depop Removes Selling Fees in the United States, Evolves Fee Structure* (July 15, 2024), https://news.depop.com/company-news/depop-removes-selling-fees-in-the-united-states-evolves-fee-structure/.

is a well documented feature in the lifecycle of abusive online platforms.[45]

**IV.     Plaintiff is a victim of Depop's deceptive drip pricing practices.**

59.     Since July 1, 2024, Plaintiff Nicole Yuen has been a victim of Depop's deceptive drip pricing practices.

60.     Depop has extracted substantial junk "Marketplace fees" from Yuen, a few dollars at a time.

61.     These fees were mandatory but variable, and therefore unpredictable.

62.     Yuen was baited into these transactions by, and relied on, the prices Depop advertised up front.

63.     Those prices were never available to her.

64.     Plaintiff believed the initially listed prices would be the actual price she would pay. In other words, Plaintiff believed the up-front prices included all mandatory fees (excluding taxes and shipping charges).

65.     Plaintiff relied on the up-front prices in comparing the products she purchased on Depop's platform to other available products, and in her initial purchasing decisions.

**CLASS ALLEGATIONS**

66.     Plaintiff brings this action under section 382 of the California Code of Civil Procedure, on her own behalf and on behalf of all others similarly situated.

67.     Subject to future amendment or revision, Plaintiff seeks to represent the following putative class ("Class"):

> All California residents who bought products on Defendant's platform on
> or after July 1, 2024.

68.     Excluded from the Class are Defendant's officers, directors, and employees; Defendant's parents, subsidiaries, affiliates, and any entity in which Defendant has a controlling interest; undersigned counsel for Plaintiff; and all judges and court staff to whom this action may be assigned, as well as their immediate family members.

---

[45] *See* Cory Doctorow, *Social Quitting* (Nov. 15, 2022), https://doctorow.medium.com/social-quitting-1ce85b67b456/, and the subsequent history of the term for this process coined here.

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND RESTITUTION

-11-

69. The Class is so numerous that joinder of all its members is impractical, as Plaintiff estimates it numbers in the thousands.

70. There are questions of law and fact common to the Class, including without limitation (a) whether Defendant has charged hidden junk fees through drip pricing; (b) whether Defendant's conduct violates the Honest Pricing Law, or other state and federal laws; (c) whether Defendant's conduct was unfair or objectively misleading; (d) whether Defendant has been unjustly enriched by its violation of Plaintiff's rights; and (e) whether Defendant should be enjoined from charging hidden junk fees through drip pricing.

71. Plaintiff's claims are typical of the Class's. Plaintiff and Class members share the same state and federal rights, which Defendant has injured in the same way by charging illegal junk fees through drip pricing.

72. Plaintiff will fairly and adequately protect the Class's interests, as Plaintiff shares the Class's interest in avoiding illegal drip pricing; has no interest adverse to the Class's; and has retained competent counsel experienced in consumer protection and class action litigation.

73. By charging hidden junk fees through drip pricing on each transaction, Defendant has acted on grounds that apply generally to Plaintiff and the Class.

74. The questions of law and fact common to Plaintiff and the Class predominate over any individualized questions because, among other reasons, Defendant has violated their rights under the same laws by the same conduct.

75. A class action is superior to other available methods for adjudicating this controversy because, among other reasons, Plaintiff's and Class members' claims may be too small to justify individual litigation.

**CLAIMS TO RELIEF**

**FIRST CLAIM TO RELIEF**

**Violation of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750–1784**

76. Plaintiff realleges paragraphs 1–67 above.

77. Section 1770(a)(29)(A) of the California Civil Code prohibits "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND RESTITUTION

-12-

charges" other than "[t]axes or fees imposed by a government on the transaction" or "[p]ostage or carriage charges that will be reasonably and actually incurred to ship the physical good to the consumer."

78.    Defendant violated Cal. Civ. Code § 1770(a)(29)(A) by omitting its junk "Marketplace fee" from the upfront prices listed on its platform.

79.    As a result of Defendant's violation, Plaintiff has suffered damage by spending time and money she would not have spent but for Defendant's misleading drip pricing.

80.    For Defendant's violation of the Consumers Legal Remedies Act, Plaintiff seeks an injunction against Defendant's illegal drip pricing.

81.    After filing this Class Action Complaint, in accordance with Cal. Civ. Code § 1782(a), Plaintiff sent to Defendant by certified mail, return receipt requested, a notice of the violations alleged in this Complaint and a demand that Defendant correct and rectify its services accordingly.

82.    If Defendant does not agree to make an appropriate correction within 30 days after receipt of this notice and demand, Plaintiff will amend this claim to relief to seek damages, in accordance with Cal. Civ. Code § 1782(a).

### SECOND CLAIM TO RELIEF

### Violation of the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500–17606

83.    Plaintiff realleges paragraphs 1–67 above.

84.    Section 17500 of the California Business and Professions Code provides that it is unlawful to make, disseminate, or cause the dissemination of advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

85.    Defendant violated Cal. Bus. & Prof. Code § 17500 by misleadingly advertising an upfront price that was lower than the total price—including hidden junk fees—it would ultimately charge.

86.    As a result of Defendant's violation, Plaintiff ha suffered injury in fact and lost money by spending time and money she would not have spent but for Defendant's misleading drip pricing.

87.    For Defendant's violation of the False Advertising Law, Plaintiff seeks an injunction

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND RESTITUTION

against Defendant's illegal drip pricing, as well as restitution.

### THIRD CLAIM TO RELIEF

### Violation of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200–17210

88.     Plaintiff realleges paragraphs 1–66 above.

89.     Section 17200 of the California Business and Professions Code prohibits unfair competition by means of "any unlawful, unfair or fraudulent business act or practice," including by violations of the False Advertising Law.

90.     Defendant violated Cal. Bus. & Prof. Code § 17200 by (a) unlawfully engaging in drip pricing, in violation of the Consumers Legal Remedies Act, the False Advertising Law, and Section 5(a) of the FTC Act; (b) unfairly engaging in unethical bait and switch advertising that injures consumers and benefits no one but Defendant, and violates the legislatively declared policy of price transparency; and (c) fraudulently advertising an upfront price that was lower than the total price—including hidden junk fees—it would ultimately charge.

91.     As a result of Defendant's violation, Plaintiff has suffered injury in fact and lost money by spending time and money she would not have spent but for Defendant's misleading drip pricing.

92.     For Defendant's violation of the Unfair Competition Law, Plaintiff seeks an injunction against Defendant's illegal drip pricing, as well as restitution.

### FOURTH CLAIM TO RELIEF

### Unjust Enrichment, California Common Law

93.     Plaintiff realleges paragraphs 1–66 above.

94.     Defendant received a benefit at Plaintiff's expense when Plaintiff paid the junk "Marketplace fee" Defendant charged.

95.     Defendant has unjustly retained the benefit Plaintiff conferred on it because Defendant procured the benefit through unlawful and misleading drip pricing, as well as through the oppressive psychological mechanisms on which drip pricing depends.

96.     For Defendant's unjust enrichment, Plaintiff seeks restitution of the benefits she paid and Defendant unjustly retained.

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND RESTITUTION

-14-

**PRAYER FOR RELIEF**

97.    Plaintiff asks the Court to

a.    Certify this action as a class action under California Code of Civil Procedure § 382, appoint Plaintiff as class representative, and appoint Plaintiff's counsel as class counsel;

b.    Enter a final judgment in Plaintiff's and the Class's favor that

i.    Permanently enjoins Defendant from the unlawful conduct alleged in this Complaint,

ii.    Awards restitution to Plaintiff and the Class according to proof, and

iii.    Awards pre- and postjudgment interest, as allowed by law;

c.    Award Plaintiff and her counsel their reasonable costs and fees incurred in prosecuting this action, as allowed by law;

d.    Order such further relief as the Court deems appropriate.

**JURY DEMAND**

98.    Plaintiff demands a trial by jury on all issues so triable.

DATE: June 23, 2025                                    Respectfully submitted,

/s/ *Vess A. Miller*

Vess A. Miller, State Bar No. 278020
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
vmiller@cohenmalad.com

Carly M. Roman, State Bar No. 349895
**STRAUSS BORRELLI, PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
croman@straussborrelli.com

Gerard J. Stranch, IV*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
gstranch@stranchlaw.com

*Attorneys for Plaintiff*
* *Pro hac vice* application forthcoming

CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND RESTITUTION

-15-